IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID CODREA | ) | |
| 7581 Valley View Road | ) | |
| Hudson, OH 44236 | ) | COMPLAINT FOR |
| | ) | DECLARATORY AND |
| OWEN MONROE | ) | INJUNCTIVE RELIEF |
| 469 Davis Road | ) | |
| Richmond Hill, GA 31324 | ) | |
| | ) | |
| SCOTT HEUMAN | ) | |
| 10838 37th AVE SW | ) | |
| Seattle, WA 98416 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | )Civil Action No. 1:18-cv-3086 |
| BUREAU OF ALCOHOL, TOBACCO, | ) | |
| FIREARMS AND EXPLOSIVES | ) | |
| 99 New York Ave. NE | ) | |
| Washington, DC 20226 | ) | |
| | ) | |
| MATTHEW WHITAKER, in his official | ) | |
| as purported acting Attorney General | ) | |
| Office of the Attorney General | ) | |
| 950 Pennsylvania Avenue, NW | ) | |
| Washington, DC 20530-0001 | ) | |
| | ) | |
| Defendants. | ) | |

Come now the Plaintiffs, by and through undersigned counsel, and allege

as follows:

## **PARTIES**

1.  Plaintiff David Codrea ("Codrea") is an adult male citizen of the State

of Ohio.  Codrea owns a device which started out as an Akins Accelerator which was rendered not a machinegun pursuant to ATF instructions after the spring was removed from the device and sent to ATF.  Codrea's former Akins Accelerator was later modified by the inventor of the bump stock, Bill Akins, after ATF approval was secured a second time.  Codrea's bump stock is in the original Akins Accelerator box signed by the inventor and has the original shipping wrapper still on it.[1]  Codrea would continue to own the device, which has been lawful since approved by the Defendants, if lawful to do so.

2.  Plaintiff Scott Heuman ("Heuman") is an adult male citizen of the State of Washington.  Heuman owns a device which the Defendants classify as a bumpstock and would continue to own the device, which has been lawful since approved by the Defendants, if lawful to do so.

3.  Plaintiff Owen Monroe ("Monroe") is an adult male citizen of the State of Georgia.  Monroe owns a device which the Defendants classify as a bumpstock and would continue to own the device, which has been lawful since approved by the Defendants, if lawful to do so.

4.  Defendant Matthew Whitaker ("Whitaker") is sued in his official capacity as the purported acting Attorney General of the United States of

---

[1] In order to prevent destruction of this piece of cultural history, Plaintiff Codrea may move for a protective order while litigation proceeds should the Final Rule not be enjoined pending litigation.

America.  As purported acting Attorney General, Defendant Whitaker holds himself out to be responsible for administering and executing the laws, customs, practices and policies of the United States, and holds himself out to be currently enforcing the laws, customs, practices and policies complained of in this action.

5. Defendant Bureau of Alcohol Tobacco Firearms and Explosives ("ATF") is a component of the Department of Justice and an agency within the meaning of 5 U.S.C. § 551.  Defendant ATF is an agency tasked with implementing firearms' related statutes, including but not limited to the National Firearms Act and the Gun Control Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331, 2201, 2202 and 5 U.S.C. §706.

7. Venue lies in this district under 28 U.S.C. §1391(e) as Defendants are government and/or agency defendants and are located in this district.

## STATEMENT OF FACTS

8. On December 27, 2016, the ATF filed an Advance Notice of Proposed Rulemaking ("ANPRM") in the Federal Register.  *See* 82 FR 60929.  In this ANPRM, the ATF stated that it "anticipated issuing a Notice of Proposed Rulemaking (NPRM) that would interpret the statutory definition of

'machinegun' in the National Firearms Act of 1934 and the Gun Control Act of 1968 to clarify whether certain devices known as 'bump fire' stocks, fall within that definition." *Id*.

9. Machinegun is defined in federal law as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

*See* 26 U.S.C. §5845(b).

10. 18 U.S.C. 921(a)(23) incorporates the National Firearms Act's definition of machinegun.  Additionally, 27 C.F.R. § 478.11 incorporates the National Firearms Act definition of machinegun.

11. While most people believe that machineguns are illegal for civilian ownership, this is incorrect.  Machineguns, lawfully owned and registered with the federal government prior to May 19, 1986, are lawful to own pursuant to federal law.

12. 18 U.S.C. § 922(o) provides that:

> (1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
> (2) This subsection does not apply with respect to—

(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

(B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

13. As such, if a transfer or possession of a machinegun is provided for "under the authority of, the United States or any department or agency thereof", the purchaser would be in compliance with 922(o).

14. The National Firearms Act ("NFA") regulates the manufacture and transfer of certain firearms by, in sum, requiring a person proposing to make or transfer an NFA firearm to: (1) file an application with the ATF; (2) obtain ATF approval; (3) have the firearm registered in the National Firearms Registration and Transfer Record (completed by ATF upon approval); and (4) pay a $200.00 tax which is evidenced by the ATF's attachment of a tax stamp on the application, which is then returned to the maker or transferor. 26 U.S.C. §§ 5812 and 5822. Possession of an NFA firearm not registered to the possessor is a felony punishable by up to ten years imprisonment and a fine of up to $250,000.00. 26 U.S.C. § 5861(d), 18 U.S.C. § 3571(b).

15. The ATF is the entity tasked with maintaining the NFRTR which is a database of all National Firearms Act registered items (these items include

machineguns, suppressors, short barrel rifles, short barrel shotguns and "any

other weapon").

16. Since at least 2008, the ATF has ruled at least ten separate times,

possibly more, that bump stocks are not machineguns because they do not fit

the statutory definition of machinegun. As such, they are not prohibited items

because they are not themselves machineguns and do not convert a

semiautomatic firearm into a machinegun as defined under federal law. *See*

82 FR 60929.

17. The ANPRM states that:

> On October 1, 2017, 58 people were killed and several hundred
> were wounded in Las Vegas, Nevada, by a shooter firing one or
> more AR-type rifles affixed with a particular bump stock device.
> In 2010, the manufacturer of this particular device had supplied
> ATF with a sample of the bump stock, and ATF had examined
> and classified it as an unregulated firearm part, not subject to
> either the [Gun Control Act] or NFA.

*Id.*

18. This statement, as part of the December 26, 2017 ANPRM states as

fact something that the ATF still does not know for certain.

19. Two Freedom of Information Act ("FOIA") requests were made

regarding bump stock type devices. One was directed to the ATF and the

other was directed to the Federal Bureau of Investigation ("FBI"). The FOIAs

requested the following:

- Any and all records documenting the use of a bump-fire type stock being used by anyone on or about Oct 1, 2017 at the Mandalay Bay shooting incident in Las Vegas, Nevada; and
- Any and all records documenting the use of a bump-fire type stock used during the commission of any crime to date.

20. The FBI denied the FOIA request on the grounds that the documents were compiled for a law enforcement investigation and denied the appeal of that denial for documents related to Mandalay Bay.  The FBI responded to the second part of that request because it claimed it could not search for those documents "in [their] indices."  *See Len Savage v. Federal Bureau of Investigation*, Civil Action No. 1:18-cv-01920 (TNM) [Docket No. 1-2].  The FBI, after it was sued to comply with the FOIA law, is now processing search terms responsive to Mr. Savage's FOIA request but has not yet provided any documentation.

21. The ATF provided a number of documents, but no documents were provided that specifically stated that bump stocks were utilized in the Mandalay Bay incident on October 1, 2017.

22. In fact, after the ANPRM was issued, the ATF released a PowerPoint slide as part of the FOIA request which specifically stated that "… on-scene ATF personnel were not allowed to physically examine the interior of the weapons for machinegun fire-control components or known machinegun

conversion devices such as Drop-In Auto Sears, Lightning Links, etc."  See Exhibit "1."

23. To date, there has not been any proof that the rifles used by the shooter at the Mandalay Bay incident which had bump stock type devices installed were not by themselves machineguns or if the rifles with bump stock type devices were utilized in bump stock mode.[2]  As such, the ATF's decision to ban devices which may or may not have actually been used in a crime is arbitrary and capricious.

24. Additionally, there have been no other reported crimes where bump stock type devices have been used.  Neither the ATF nor FBI have produced any evidence where bump stocks have been purportedly used in a crime.  As such, banning a device that has not been used in any other crime is arbitrary and capricious in and of itself.

25. Contrary to President Trump's claim that he would "never, ever infringe on the right of the people to keep and bear arms … Never ever[]",[3] shortly thereafter, President Trump claimed that "We are knocking out bump stocks, I have told the (National Rifle Association) – bump stocks are gone."

---

[2] This argument was put forth in a comment to the ATF after it promulgated the Notice of Proposed Rulemaking and will be discussed in fuller detail *infra*.  See Comment: https://www.regulations.gov/document?D=ATF-2018-0002-75886.

[3] https://www.nbcnews.com/politics/white-house/trump-nra-eight-year-assault-gun-rights-over-n752446

*Id*. The rulemaking was merely a formality on the way to infringe on law-abiding citizens' rights because the end result is that the government wanted to ban these devices.

26. On March 29, 2018, the ATF published in the Federal Register the Notice of Proposed Rulemaking ("NPRM").  *See* 83 FR 13442.[4]  Comments were solicited from the public and the comment period ended on June 27, 2018.

27. In the NPRM, the ATF sought to "clarify that 'bump fire' stocks, slide-fire devices, and devices with certain similar characteristics (bump-stock-type devices) are 'machineguns' as defined by the [NFA and GCA] because such devices allow a shooter of a semiautomatic firearm to initiate a continuous firing cycle with a single pull of the trigger." *Id.*  The NPRM stated that these "devices convert an otherwise semiautomatic firearm into a machinegun by functioning as a self-acting or self-regulating mechanism that harnesses the recoil energy of the [firearm] in a manner that allows the trigger to reset and continue firing without additional physical manipulation of the trigger by the shooter." *Id*.

28. However, this is a complete fabrication and ATF knows that it is a complete fabrication.  In actuality, and as argued in *Freedom Ordnance Mfg.*,

---

[4] https://www.gpo.gov/fdsys/pkg/FR-2018-03-29/pdf/2018-06292.pdf

*Inc. v. Thomas E. Brandon, Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives*, Civil Action No. 3:16-cv-243-RLY-MPB, in the District Court of the Southern District of Indiana in July 2017, the ATF argued that bump firing "requires the shooter to manually pull and push the firearm in order for it to continue firing.  Generally, the shooter must use both hands – one to push forward and the other to pull rearward – to fire in rapid succession.  While the shooter receives an assist from the natural recoil of the weapon to accelerate subsequent discharge, the rapid fire sequence in bump firing is contingent on shooter input in pushing the weapon forward, rather than mechanical input, and is thus not an automatic function of the weapon."[5] *Id*.

29. The Final Rule was published in the Federal Register on December 26, 2018 (83 FR 66514).

30. The Final Rule purports to redefine statutory law as to what constitutes a machinegun.  The entire language is contained herein:

> **§ 447.11 Meaning of terms**: *Machinegun*.  A "machinegun", "machine pistol", "submachinegun", or "automatic rifle" is a firearm which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.  The term shall also include the frame or receiver of any such weapon, any

---

[5] This document is part of the administrative record, as it was provided with the Comment during the commenting period and is, in any event, the ATF's consistent position from at least 2010.

part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person. For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term "machinegun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.

**§ 478.11 Meaning of terms.** *Machine gun.* * * * For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term "machine gun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.

**§ 479.11 Meaning of terms.** *Machine gun.* * * * For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," mean functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term "machine gun" includes a bump-stock-type device, i.e., a

device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.

31. The Final Rule is vague as it unlawfully redefines statutory law from "single function of the trigger" to "single pull of the trigger and analogous motions." The plain language of this rule appears to make a "binary trigger", a trigger that fires once on the pull and once on the release (which heretofore was never considered a machinegun by the ATF), into a machinegun itself. However, with the Final Rule, the ATF has <u>exempted</u> binary triggers because "under the rule – one function of the trigger results in the firing of only one round." See Final Rule, p. 83.

32. The Defendants' conclusions miss the mark as every semiautomatic can fire as fast as a machinegun as they have the same essential operating mechanism. There is no increase in rate of fire, but simply achieving what the host weapon is capable of. For instance, some shooters can fire semiautomatic firearms faster than others.

33. In another instance of absurdity, semiautomatic rifles can be "bump fired" without a bump stock attached either by utilizing a technique to achieve a rapid succession of firing or utilizing a rubber ban or a simple belt loop.

34.Because the essential operational mechanism for both a machinegun and a semiautomatic rifle are almost identical, this Final Rule is literally the camel's nose under the tent and the slippery slope is not a mere gradual decline into more executive gun control, but instead a straight drop off a cliff which can be further used against law abiding gun owners to dictate by agency fiat whatever the political pressure of the day may be.

35.Without due regard to any individuals who currently and lawfully possess these bump stock type devices, when this rule is implemented, these individuals, including the Plaintiffs, will be made felons if they do not immediately destroy or dispossess themselves of items that were specifically authorized by the ATF.

36.No compensation is provided to the owners of these devices which can be as expensive as $500.  This violates the Takings Clause of the Fifth Amendment to the United States Constitution as the Plaintiffs' (and others similarly situated) property is taken from them without any compensation.

37.Bump stocks constitute property covered and protected by the Takings Claus of the Fifth Amendment.  By banning possession as well as all other property rights associated with continued ownership of this personal property, the Rule deprives existing owners of bump stock type devices of all beneficial uses of their previously owned bump stock type devices.

38.There is no grandfathering clause under the Final Rule.  As such, the Rule bans continued possession of personal property in which the owner has a vested interest and is a *per se* Taking under the Takings Clause of the Fifth Amendment, regardless of whether physical possession of the property is actually assumed by the government.  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 324 n.19 (2002) (a physical taking "dispossess[es] the owner" of property); *Nixon v. United States*, 978 F.2d 1269, 1287 (D.C. Cir. 1992) (statute that "physically dispossessed" property owner "resulted in" a *per se* taking).

39.Under the Takings Clause of the Fifth Amendment, the government may not abrogate vested rights in private property without compensation, even in the exercise of its otherwise valid police powers. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1026 (1992) ("the legislature's recitation of a noxious-use justification cannot be the basis for departing from our categorical rule that total regulatory takings must be compensated. If it were, departure would virtually always be allowed"); *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 425 (1982) (accepting the lower court's holding that the regulation at issue was "within the State's police power," but holding that "[i]t  is a separate question, however, whether an

otherwise valid regulation so frustrates property rights that compensation must be paid").

40. The ATF lacks the authority to expand the definition of machinegun to include a bump stock.  The definitions of what constitutes a machinegun is black letter law in the statutes mentioned herein.  The ATF cannot rewrite statutory law by regulation.

41. Even Senator Dianne Feinstein acknowledges that the "ATF currently lacks authority under the law to ban bump stocks."[6]

42. The current statutes defining machineguns are not vague and they are not ambiguous.  Congress understood in 1934 when it drafted the NFA, that a machinegun operated automatically on the basis of a "single function of the trigger."

43. Under *Wis. Cent., Ltd. v. United States*, No. 17-530, 2018 U.S. LEXIS 3837 (June 21, 2018), the ATF is precluded from expanding the definition of machinegun to reach beyond the statutory language.  "Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and

---

[6] https://www.feinstein.senate.gov/public/index.cfm/press-releases?ID=924D0732-EAF8-4343-952E-9DEF34066B9D (last accessed 12/21/2018).

preferences. Until it exercises that power, the people may rely on the original meaning of the written law." *Id.* at *17.

44. If the rule is allowed to be implemented, notions of fair play and justice demand that the Attorney General allow for an amnesty so as to register these devices as machineguns under the National Firearms Act.  18 U.S.C. §922(o) would allow the ATF to process these amnesty registrations "under the authority of" clause of §922(o).  At least one machinegun was allowed to be registered after the May 19, 1986 cutoff in §922(o)[7], and that proof was submitted to the ATF in the comment provided.

45. In addition to that, an expert report was provided by Len Savage, President of Historic Arms LLC and made an exhibit to the comment submitted.  Mr. Savage's expert report is incorporated herein as it describes precisely how a bump stock works and how bump firing works.

46. Mr. Savage opined that[8]:

> All firearms have a recoil impulse because in order to propel a projectile out the barrel, an equal force in the opposite direction is also generated. A semiautomatic firearm, due to its mechanical nature, has the ability to generate this recoil impulse every time the trigger is activated.

[7] Many more machineguns are expected to be discovered manufactured after the May 19, 1986 civilian cutoff and perhaps limited discovery on this topic may be helpful to the Court as to whether the ATF can allow post-May 1986 machineguns using the "under the authority" clause.

[8] Mr. Savage's expert report can be found at this link and is a part of the administrative record: https://www.regulations.gov/document?D=ATF-2018-0002-75886.

This cycle of mechanical events that start with the trigger activation and end with a new round in the chamber ready to begin again is the cycle rate or how fast the firearm can physically complete cycles (or rounds fired).

The fact is any semiautomatic AR-15 (or AK-47 for that matter) can fire as fast as a machinegun version.  Their cyclic rates are identical to the machinegun version.  Their essential operating mechanisms are identical, same ammo, same mags, same reciprocating mass.  The only small physical difference is the machineguns described have a mechanical lever that "automatically" starts the new cycle as soon as the previous cycle ends.

Some semiautomatic firearms can even fire faster than the full auto version because the machinegun version having some form of a rate reducing mechanism.

ALL semiautomatic firearms can be "bump fired" regardless of any "bump-type-stock-device" installed or not.  It is a matter of skill and coordination to find the "rhythm", or cyclic rate of the firearm at hand and the correct amount of counterforce to be applied and when to apply them.

The only "self acting and self regulating" force of a bump-type-stock-device is provided by the shooter and the firearm, none is provided by the stock.   Basketballs don't dribble automatically even if the skills of most the NBA players make it appear so.

A bump-type-stock-device allows a small amount of linear motion of the firearm frame, allowing for safe control of the firearm while utilizing the bump fire shooting technique. There is less risk of loss of control of the firearm when using bump-type-stock-device vs. using the shooting technique without one.

47. Mr. Savage is especially well-versed in bump stock technology because "20% of the DOJ cited ATF classification letters on "Bump-Stock-Type-Devices" are addressed to [him]." *Id*.

48. Mr. Savage also stated that the ATF could "grandfather" these firearms as follows:

> … on September 10, 2009, ATF experts were asked about the firearms "grandfathered" in ATF Ruling 82-8 under oath. The ATF's official position is that the firearms are machineguns, do not require registration, nor do they require a tax be paid on them, and the ATF is aware they are in circulation *(approximately 50,000)*, but are no longer manufactured. (US vs. One Historic Arms Model 54RCCS Case 1:09-CV-00192-GET).

*Id*.

49. This is an admission from the ATF, under oath, that grandfathering of machineguns can occur and have occurred in the past.

50. Mr. Savage quoted from a case regarding the definition of "bump firing" which the government stated:

> "Bump firing" is the process of using the recoil of a semiautomatic firearm to fire in rapid succession, simulating the effect of an automatic firearm when preformed with a high level of skill and precision by the shooter. Bump firing requires the shooter to manually and simultaneously pull and push the firearm in order for it to continue firing. *(Case 3:16-cv-00243-RLY-MPB Document 28, Page 2)*.

51. Mr. Savage stated in response that, "If such a device were truly self acting and self regulating (sic) as the Department of Justice now claims, then a bump-stock-type-device equipped firearm should fire as a machinegun with

no coordinated skilled effort from any other body part (which is impossible)."
*Id*.

52. Mr. Savage further stated that the Rule "has descriptive language that is so vague it could be describing hundreds of thousands of pump shotgun in the US, making each a potential machinegun.  As there are several models of shotguns that operate precisely as stated on page (1) of the NPRM **'firing without additional physical manipulation of the trigger by the shooter'** (There were approximately 500,000 Model 37 pump shotguns made by Ithaca alone)." (emphasis in original).  *Id*.

53. Mr. Savage then made the following comments:

> If the government really wanted bump-stock-type-devices to go away, and they claim they have the right to reconsider its previous interpretations, then the government would open the NFRTR to new transferable machineguns.

> Nobody would bother with a bump-stock-type-devices and the government would know precisely where each new machinegun was.  922(o) " ….Or under the authority of".  The government could choose to simply "authorize" the new registrations.

> OR: The Attorney General could simply declare a general amnesty under the NFA any time he wishes to as long as they are not concurrent (must be separated by one calendar day).

> DOJ has had the power to do both and neither would have required any proposed rule making.

> Claims made by DOJ in the NPRM can only be described as deceptive; they are not supported by scientific facts or DOJ's own documents.

54. Mr. Savage's expert report demonstrates that the Final Rule (at that time, it was the Notice of Proposed Rulemaking, but the it has not changed in substance to the Final Rule) is arbitrary and capricious and contrary to law. Instead, the government should declare an amnesty utilizing the language under § 922(o), "under the authority of" clause, and allow these devices to be registered in the NFRTR.

55. Additionally, the purported Acting Attorney General, Matthew Whitaker, may not have the constitutional authority to act as the Attorney General because he was not confirmed by the Senate. As detailed in *Senator Richard Blumenthal, et al. v. Matthew G. Whitaker, et al*, Civil Action No. 1:18-cv-02664, pending in this Court, there is a bona fide question as to whether the purported Acting Attorney General (herein a Defendant as well) can lawfully assume the office of the Attorney General as Acting Attorney General and sign off on the rule to turn bump stocks into machineguns.

56. If the purported Acting Attorney General has no authority to conduct the powers of his office, then the rule bearing his signature is of no force and effect. As such, this is a separate and complete basis from which to not allow the rule to be implemented and at a minimum, any implementation should be stayed pending resolution of the whether the Acting Attorney General has the authority to do so.

57. Additionally, as mentioned in the Final Rule, the ATF reclassified a device called the "Akins Accelerator" as a machinegun in 2006.  However, after the reclassification of the Akins Accelerator as a machinegun, the "ATF … advised owners of Akins Accelerator devices that the removal and disposal of the internal spring – the component that caused the rifle to slide forward in the stock – would render the device a non-machinegun under the statutory definition.  Thus, a possessor could retain the device by removing and disposing of the spring, in lieu of destroying or surrendering the device." Final Rule, at pp. 15-16.

58. Instead of allowing the current possessors to continue to possess these devices if rendered inoperable, the ATF has taken the position that "current possessors of bump-stock type devices will be obligated to cease possessing these devices."  Final Rule, at pp. 25-26.  A current possessor could easily keep the stock and render it inoperable by permanently disabling the sliding feature of the stock, much like what the ATF allowed for the Akins Accelerator by advising owners of those devices to remove the spring.

59. However, the ATF has mandated surrender or destruction of bump stocks instead which violates the property rights of each individual possessor, including the Plaintiffs.  Final Rule, at pp. 67-68 (must crush, melt, shred device or turn into ATF office).

60. After the Final Rule was first released for public inspection, but before the Final Rule was published in the Federal Register, the ATF provided a website that purports to demonstrate how to destroy a bump stock by cutting and the ATF indicated where the cuts must be made.[9]

61. The ATF's "Destruction Instructions"[10] state:

> For destruction, regardless of manufacturer or model, a bump stock must be made incapable of being readily restored to its intended function by, e.g., crushing, melting or shredding the bump stock.
>
> Bump stocks may also be destroyed by cutting, so long as the bump stock is completely severed in the areas constituting critical design features, denoted by the red lines in the specific model of bump stock destruction diagrams that follow.
>
> The bump stock must be completely severed in <u>each</u> area indicated by the red line.
>
> Destroying a bump stock using any other method may be legally insufficient, such that continued possession of the device may violate 18 U.S.C. 922(o).

62. A picture of a bump stock with red lines drawn across is presented as the model for which to use, presumably, to cut a bump stock into pieces:

---

[9] https://www.atf.gov/rules-and-regulations/bump-stocks/how-to-destroy (last accessed 12/22/2018).

[10] https://www.atf.gov/rules-and-regulations/bump-stocks/how-to-destroy/bump-fire-systems-ar-and-ak-bump-fire-stocks (last accessed 12/22/2018).



63.However, the ATF disclaimer at the bottom of the "Destruction Instructions" still includes the caveat that: "Destroying a bump stock using any other method may be legally insufficient, such that continued possession of the device may violate 18 U.S.C. 922(o)." These drawings were not included in the Final Rule and presumably could change at the whim of the ATF (or other political powers that be) by simply changing the website.

64.Furthermore, this "destruction" is supposed to render this device not a machinegun under the new Final Rule, but it is left to the imagination as to what may happen if a cut is not made precisely on the lines ATF instructs at this point in time, so that the possessor still may faced with prosecution of having a machinegun should the Final Rule be implemented.[11]

---

[11] May possessors of these now cut-up and destroyed devices at least get to keep the pieces of their property?  No, as the ATF commands, one must "throw the pieces away".  See Final Rule, pp. 68 & 138.

65. For all these reasons, and others which will be shown during the course of this litigation, the Defendants have violated the Administrative Procedures Act.  The Plaintiffs seek a declaration that the rule attempting to classify bump stocks as machineguns is invalid, and an injunction requiring the Defendants to rescind the rule and refrain from acting in a manner inconsistent with such rescission.

## COUNT I (Violation of Administrative Procedures Act – *Ultra Vires* Conduct)

66. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

67. Under the Administrative Procedure Act (APA), a court must set "aside agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

68. Defendants rule constitutes a final agency action that is ultra vires and should be set aside by the Court.

69. The Defendants may only exercise the authority conferred to them by statute.  Neither the NFA nor the GCA confer upon Defendants the power to rewrite the definition of machinegun or to promulgate a rule in open defiance of statutory text.

## COUNT II (Violation of the Administrative Procedure Act – Action Not in Accordance with Law)

70. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

71. Under the APA, a court must set aside agency action that is "not in accordance with law." 5 U.S.C. §706(2)(A).

72. As discussed *supra*, Defendants actions and rule flout the very statutory language they purport to issue the new regulation on, and flout over ten years of prior consistent rulings that the bump stocks at issue are not machineguns.

### COUNT III (Violation of the Administrative Procedure Act – Arbitrary and Capricious Agency Action)

73. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

74. Under the APA, a court must set "aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §706(2)(A).

75. A court may hold that an agency action is arbitrary and capricious when the agency has failed to consider relevant evidence or articulate a satisfactory explanation for its action.  An agency's departure from prior practice can serve as an additional basis for finding an agency's action to be arbitrary and capricious.

### COUNT IV (Violation of the Takings Clause of the Fifth Amendment)

76. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

77. The Rule constitutes a per se Taking of Plaintiffs' vested interests in personal property in violation of the Takings Clause of the Fifth Amendment.

78. As a direct and proximate result of Defendants' violation of the Takings Clause of the Fifth Amendment, the Plaintiffs have suffered irreparable harm, including the loss of property and of constitutional rights entitling them to declaratory and injunctive relief, as well as compensatory damages under 42 U.S.C. § 1983.

## COUNT V (Violation of Executive Order 13771)

79. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

80. On January 30, 2017, President Trump issued Executive Order (EO) 13771. This EO is titled Reducing Regulation and Controlling Regulatory Costs and mandates that "for every one new regulation issued, at least two prior regulations be identified for elimination."[12]

---

[12] https://www.federalregister.gov/documents/2017/02/03/2017-02451/reducing-regulation-and-controlling-regulatory-costs

81. This EO mandates that when an "agency publicly proposes for notice and comment or otherwise promulgates a new regulation, it shall identify at least two existing regulations to be repealed."

82. However, no such information is included in the proposed rule and therefore, the proposed rule violates EO 13771 and should be rescinded and/or voided.

## COUNT VI (Violation of 28 USC § 508(a) and the Appointments Clause of the United States Constitution)

83. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

84. Defendant acting Attorney General Whitaker's appointment violated 28 USC § 508(a) as he was not the Deputy Attorney General when Attorney General Sessions resigned.

85. Acting Attorney General Whitaker signed the Final Rule, and because his appointment is unlawful under § 508(a), the Final Rule is of no force and effect because acting Attorney General Whitaker has no authority to exercise the powers of the office he purports to hold.

86. Additionally, because the Senate has not given its "advice and consent" on the appointment of acting Attorney General Whitaker, President Trump's

appointment violates the Appointments Clause of Article II, Section 2, Clause 2 of the United States Constitution.

87. As such, the Court can declare that the Final Rule is void on this basis alone.

## COUNT VII (The Court Should Mandate an Amnesty)

88. All of the foregoing allegations are repeated and realleged as if fully set forth herein.

89. Given the prior history of the ATF approving these devices, and allowing the public to purchase, own, possess and use the devices, interests of justice require that the ATF allow these devices (if the Final Rule is upheld and the devices now constitutes a machinegun), to be registered during a general amnesty in the NFRTR.

90. An amnesty period can be enacted which would satisfy a number of requirements that the Final Rule ignores and would let current possessors possess the items registered as machineguns in the NFRTR.  The Code of Federal Regulations, for machineguns, states in part, that: "… No firearm may be registered by a person unlawfully in possession of the firearm except during an amnesty period established under section 207 of the Gun Control Act of 1968 (82 Stat. 1235). 27 C.F.R. § 479.101 (Lexis Advance through the

December 19, 2018 issue of the Federal Register. Title 3 is current through December 10, 2018).

91. Given that the Defendants have the authority to declare an amnesty and register these devices, justice would require that instead of surrendering or destroying an item with tangible value, these devices are instead registered through the NFRTR.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

(1) Declare that the Final Rule is unlawful and an *ultra vires* agency action and of no force and effect;

(2) Declare that the Final Rule is an act "not in accordance with law" and of no force and effect;

(3) Declare that the Final Rule violates the Administrative Procedures Act as it is arbitrary and capricious and is of no force and effect;

(4) Declare that the Final Rule violates the Takings Clause of the United States Constitution;

(5) Issue an injunction requiring Defendants to rescind the Final Rule;

(6) Issue an injunction prohibiting Defendants and anyone acting in concert with them from taking any action inconsistent with the rescission of the Final Rule;

(7) Declare that Acting Attorney General Whitaker's appointment is invalid, and thus, the Final Rule which bears his signature is of no force and effect as he has no authority to issue this Final Rule;

(8) Alternatively, mandate that the Defendants declare an amnesty and allow for the registration in the NFRTR;

(9) Grant Plaintiffs an award of attorneys' fees and other litigation costs reasonably incurred in this action; and

(10) Grant Plaintiffs such other relief as the Court deems just and proper and as justice so requires.

Dated: December 27th, 2018

Respectfully Submitted,

**/s/ Stephen D. Stamboulieh**
Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
DC District Court Bar# MS0009

**/s/ Alan Alexander Beck**
Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Alan.alexander.beck@gmail.com
DC District Court Bar# HI001

*Counsel for Plaintiffs*