IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID CODREA, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | Civil Action No. 18-cv-3086-DLF |
| BUREAU OF ALCOHOL, TOBACCO, ) | |
| FIREARMS AND EXPLOSIVES, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

Dated: February 8, 2019

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
DC District Court Bar# MS0009
*Counsel for Plaintiffs*

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Alan.alexander.beck@gmail.com
DC District Court Bar# HI001

**TABLE OF CONTENTS**

I.   Statement Regarding Oral Argument……………………………………………1

II.  Introduction…………………………………………………………………...…….1

III. Plaintiffs Have Established a Likelihood of Success on Their Claims……..…1

    a. Defendants' Rule is Arbitrary and Capricious……………………….……1

    b. The Final Rule's Treatment of Other Devices Demonstrates its
    Arbitrariness…………………………………………………………..……..7

    c. The Final Rule's Entire Premise is Based on Speculation……..……….9

    d. Defendants' Actions are Unreasonable as they are Ultra Vires……..…….9

    e. Defendant Whitaker's Appointment Was Unconstitutional………..…….14

    f. The Government Concedes Irreparable Harm……………………...……14

IV.  Conclusion……………………………………………………………...…………16

    Certificate of Service

### I. Statement Regarding Oral Argument

Plaintiffs are aware that oral argument on the related cases was held on February 6, 2019. Plaintiffs believe that oral argument would assist the Court to the extent the claims and briefing presented in Plaintiffs' moving papers are different than that of the related cases. For instance, Plaintiffs do not concede that the Final Rule is reasonable, and instead would argue that the Final Rule is without legal authority, violates the plain text of the statute, and in any event, is arbitrary, capricious and not a reasonable interpretation of the statute. Additionally, Plaintiff Codrea has an Akins stock and would be able to more fully address the Court's questions, raised on the February 6, 2019 hearing, regarding the operation of that device. As to Plaintiffs' claims regarding Acting Attorney General Whitaker's appointment, oral argument would be unnecessary on that claim and Plaintiffs would rely on the argument presented in the briefs, and because the related case makes the same argument, Plaintiffs would also rely on the argument already held on that issue.

### II. Introduction

Defendants filed their Opposition to Plaintiffs' Motion for Preliminary Injunction ("Opp.") on February 1, 2019. Plaintiffs believe a preliminary injunction, at this stage, is not only appropriate but necessary for the Court (and any subsequent Court of Appeals) to determine the validity of the Final Rule before Plaintiffs (and all other similarly situated individuals) become dispossessed of private property they may never be able to own again, even if the Final Rule is invalidated. Justice requires an injunction.

### III. Plaintiffs Have Established a Likelihood of Success on Their Claims

#### a. Defendants' Rule is Arbitrary and Capricious

Defendants' Opposition states that the "Final Rule sets forth thirty detailed pages of analysis that persuasively explain why the 'best interpretation' of the statutory definition of 'machinegun' is one that includes bump stocks."  Opp. at p.13.  The Defendants allege that this Court must not "substitute its judgment for that of the agency" and that the "agency's statement must be on of reasoning; it must not be just a conclusion; it must articulate a satisfactory explanation for its action…"  Opp. at p. 13.  (citations omitted).

The Defendants failed to offer satisfactory explanations for their actions, and instead, they were presented with an order (outlawing bump stocks) and then attempted to justify the conclusion.  President Trump tweeted on February 22, 2018 that he "will be strongly pushing Comprehensive Background Checks with an emphasis on Mental Health.  Raise age to 21 and end of sale of Bump Stocks!"[1]  Then, on March 23, 2018, President Trump tweeted, that "Obama Administration legalized bump stocks.  BAD IDEA.  As I promised, today the Department of Justice will issue the rule banning BUMP STOCKS with a mandated comment period.  We will BAN all devices that turn legal weapons into illegal machine guns."[2]  As promised with the forgone conclusion that bump stocks are to be outlawed, the Final Rule, with a stroke of the pen by an Acting Attorney General and published in the Federal Register during a government shutdown, were put into effect on December 26, 2018. The Defendants admit that the "analysis in the Final Rule mirrors that

---

[1] https://twitter.com/realdonaldtrump/status/966662241977360384?lang=en

[2] https://twitter.com/realdonaldtrump/status/977286489410240514?lang=en

in the NPRM".[3] These Plaintiffs, and all others similarly situated, must destroy their private property or abandon it to an ATF office, or they will be felons.

The ATF believes a clarification is needed to mandate that bump stocks are machineguns, not because of agency expertise (in fact, the ATF has taken the position it cannot regulate these devices as machineguns because they are not machineguns multiple times in the past) but instead issued this "clarification" because of political pressure. The Defendants state a multi-pronged determination that a bump stock now equals a machinegun: "This conclusion is based on the determination that, as long as: 1) the trigger finger remains stationary on the ledge provided by the design of the device; 2) the shooter maintains constant rearward pressure on the trigger; and 3) the shooter engages in constant forward pressure with the non-trigger hand on the rifle through the barrel-shroud or fore-grip; then, the firearm's recoil energy is harnessed in a continuous back-and-forth cycle []. In this way, a bump stock constitutes a 'self-regulating' or 'self-acting' mechanism that allows the shooter to attain continuous firing after a single pull of the trigger." Opp. at p. 9.

So, if any of these multi-pronged determinations fail, then logically, a bump stock could not be a machinegun. In fact, it would appear that (if the Final Rule becomes valid), then removing the "ledge provided by the design of the device" would render the bump stock not a machinegun. But this position is inconsistent with the Final Rule which states

---

[3] See Opp. p. 8. The NPRM is where the public could comment on the proposed language of the Final Rule. However, it looks as though none of the comments were taken seriously and instead, as the Defendants conceded, the analysis in the Final Rule mirrors the NPRM. To be sure, the Defendants addressed some of the comments, but it does not appear that the comments really achieved anything substantive except mandate that the Defendants respond to them.

that, "[t]he Department does not believe that removing the trigger ledge is sufficient to affect a bump-stock-type device's classification as a machinegun. While the trigger ledge makes it easier to utilize the device, removing the ledge does nothing to prevent the directing of 'recoil energy' … Therefore, even without the trigger ledge, the bump-stock-type device will operate as designed if the shooter simply holds his or her finger in place." Final Rule at 66537. This further demonstrates the arbitrariness of the decision to classify bump stock devices as machineguns because the finger ledge is either required as part of the device or it is not.

What the Defendants attempt to do is to outlaw the human physical component necessary for which to bump-fire a rifle. Bump stocks do not operate as a machinegun, which fire "… automatically more than one shot, without manual reloading, by a single function of the trigger..." *See* 26 U.S.C. §5845(b). Instead, the Defendants attempt to provide a new meaning to "automatically", which is not an ambiguous term and should be afforded its plain meaning.

The plain definition of "automatically" is defined as "without human control; independently."[4] A shooter firing a machinegun merely pulls the trigger and holds it, and the machinegun continues to fire until the ammunition is expended or until the shooter releases the trigger. This is what is demonstrated in Mr. Savage's expert report because without the human input (or control), a bump stock simply does not do anything except act like a stock. It takes skill and technique to make a bump stock function. Said another way, if a shooter using a bump stock pulls the trigger without the exact right amount of pressure on the forward end of the firearm and the exact right amount of pressure on the stock, the

---

[4] https://dictionary.cambridge.org/us/dictionary/english/automatically

rifle will do nothing but fire one round. If, for instance, a shooter does not hold the forward end of the firearm, and merely uses one hand to fire the weapon, it will still fire only one shot by every pull of the trigger.

Defendants cite to the *Olofson* case, and it should be pointed out to the Court that the defendant in *Olofson* did not have a bump stock equipped rifle, but instead had a rifle (of the same type classification of some of the rifles found at the Mandalay Bay incident: AR-15) which "had been assembled with four machinegun components: the trigger, the hammer, the disconnector, and the selector switch. (*Id*. at 102.) This would make the weapon fire automatically and would therefore constitute a machinegun." *Olofson v. United States*, No. 10-C-0896, 2013 U.S. Dist. LEXIS 112481, at *12 (E.D. Wis. Aug. 9, 2013). What is not known, at least to the public, was whether any of the rifles found in the Mandalay Bay incident also had the same type of machinegun components, thus making those firearms machineguns in and of themselves. And neither the FBI nor the ATF will say definitively one way or the other.

This is not a distinction without a difference, yet the Defendants attempt to bootstrap the 7th Circuit's Ruling in *Olofson* to stand for something that it does not. The Defendants claim that *Olofson* "requires only that the weapon shoot multiple rounds with a single function of the trigger 'as the result of a self-acting mechanism,' not that the self-acting mechanism produces the firing sequence without any additional action by the shooter." Opp. at p. 17. This of course is a much-expanded view of *Olofson*, because Olofson's firearm, as stated previously, had actual machinegun components installed within it. And further, Olofson's rifle would only fire as a machinegun with certain ammunition (soft primer ammunition).

The United States Supreme Court has already defined the term "automatic" as found within *Staples*:

> As used here, the terms "automatic" and "fully automatic" refer to a weapon that fires repeatedly with a single pull of the trigger. That is, once its trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted. Such weapons are "machineguns" within the meaning of the Act. We use the term "semiautomatic" to designate a weapon that fires only one shot with each pull of the trigger, and which requires no manual manipulation by the operator to place another round in the chamber after each round is fired.

*Staples v. United States*, 511 U.S. 600, 602 n.1, 114 S. Ct. 1793, 1795 (1994). Under this plain-text definition, a bump stock is not a machinegun, because simply depressing the trigger will not cause the weapon to "automatically continue to fire until its trigger is release or the ammunition is exhausted." The Defendants concede that there are multiple physical inputs required for a bump stock to operate and Defendants' strained definition proves that bump stocks are not machineguns.

If the Court was not convinced that the definition Defendants put forth is unreasonable, then it should simply look at the last sentence of the Final Rule (underlined):

> **§ 479.11 Meaning of terms.** *Machine gun*. * * * For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," mean functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. <u>The term "machine gun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.</u>

Nowhere in a bump stock device does it "harness" recoil energy and the trigger absolutely requires additional "physical manipulation" by the shooter in order for it to continue to fire. But the big question should be, if the Final Rule's regulation means bump

6

stock, why state separately that "machine gun" includes a bump-stock-type device? It seems unnecessary surplusage unless the government concedes that the actual definition set forth does not apply to bump stocks which is why it is necessary to define machinegun as encompassing a bump stock.

b.  **The Final Rule's Treatment of Other Devices Demonstrates its Arbitrariness**

Defendants claim that the Final Rule's treatment of bump stocks as compared to other devices which could accelerate the rate of fire is not unreasonable. Opp. at p. 18. Defendants, regarding binary triggers and why they are not machineguns, state that binary triggers "permits two rounds to be fired; the first is fired when the trigger is pressed and the second round is fired when the trigger is released. Thus, a single round is fired with each function: the pull and release."[5] *Id*. Defendants have taken the statutory definition of machinegun and flipped it on its head by making a "pull" and "release" now two functions of a trigger, when the only "function of a trigger" is a "pull and release". But binary triggers are safe, at least for now, and are not considered machineguns, until the Defendants revisit this classification again. Perhaps this was done to limit the number of manufacturers or owners that would complain at this stage, since the only ban on the table is bump stocks. In any event, it is the apex of arbitrary and capricious to admit that a binary trigger fires twice and is not a machinegun, but then to classify a bump stock as a machinegun when it only fires one round per "pull and release".

---

[5] Given the Defendants' assumed position that a trigger now has two separate functions (pull and release), perhaps if a trigger had three separate functions (pull, half reset, release or some other 'analogous motion') then even if it would fire three rounds during those three separate movements, it would not satisfy the definition of machinegun.

Defendants claim that rubber bands are not "designed to be affixed" to a semiautomatic and thus, are not classified as machineguns. A rubber band is usually used to hold objects together. However, rubber bands can also be used to store (or harness) energy and can be used to fly small model airplanes.[6] Rubber bands can also be used to bump fire rifles. See https://www.youtube.com/watch?v=DbNO7ich0ns (video of rapid manual trigger manipulation utilizing a rubber band stretched across the magazine well and behind the trigger). The rubber band attached to the rifle in the video assists in bump firing by assisting in resetting the trigger, utilizing the energy stored in the rubber band because when the operator depresses the trigger, the rifle is fired and the trigger reset, which then of course allows for faster firing.[7]

The Final Rule is arbitrary and unreasonable because it treats the same result (bump firing) completely different based upon what is used to achieve the technique of bump firing. And as stated in Mr. Savage's report, "ALL semiautomatic firearms can be 'bump fired' regardless of any 'bump-type-stock-device' installed or not. It is a matter of skill and coordination to find the 'rhythm', or cyclic rate of the firearm at hand and the correct amount of counterforce to be applied and when to apply them." *See* Docket 16-1, p.3.

In a footnote, Defendants state that a "bump stock is more akin to a paddle ball … wherein the ball is constrained in the distance it may travel from the paddle by an attached

---

[6] http://www.rubber-power.com/

[7] In an interesting classification, the ATF classified a "14-inch long shoestring with a loop at each end" as a machinegun. Almost three years later, the ATF reversed itself that a "string by itself is not a machinegun, whether or not there are loops tied on the ends. However, when the string is added to a semiautomatic rifle as you proposed in order to increase the cycling rate of that rifle, the result is a firearm that fires automatically and … [is] a machinegun." See Docket 16-1, pp. 61-62.

string, thereby facilitating the ability of the player to control the ball and find the rhythm appropriate for automatically performing the task." *See* fn. 11. Ironically, the link provided by Defendants shows a paddle, and a ball and a "thin rubber cord" which would attach the ball to the paddle. In any event, the reference is humorous as this would make it more like the Akins Accelerator which utilized an internal spring to assist in bump firing and a regular bump stock does not have any springs, elastic bands or other energy storing devices contained within.

c.    **The Final Rule's Entire Premise is Based on Speculation**

As stated previously, there is no factual foundation that the "Las Vegas perpetrator['s]" rifles were not in and of themselves illegally modified machineguns, some of which were equipped with bump stocks. The ATF has not inspected the rifles used. The FBI, one must assume, has inspected them, but has not released any information publicly which would identify whether, like in *Olofson*, those weapons had machinegun fire control devices installed. Defendants believe that this is a non-issue and the fact that the Las Vegas perpetrator may have used bump stocks "illustrated the particularly destructive capacity" of bump stocks which then lead to "instructions from the President on which the agency acted." Opp. at p. 19. This last part is telling, in that Defendants concede (as President Trump's tweets and comments make pellucid), the banning of bump stocks was a conclusion in search of a justification from an agency that said over and over that it had no authority to do then what it is doing now.

d.    **Defendants' Actions are Unreasonable as they are Ultra Vires**[8]

---

[8] In footnote 2 of the Opp., Defendants mistakenly reference an "ASFS stock" which the ATF permitted registration in November, 2011. In fact, this was not an "ASFS stock" which was registered after the May 19, 1986 § 922(o) cutoff date, but a machinegun,

Plaintiffs concede that "ATF and DOJ have routinely provided regulatory definitions of the terms Congress did not define in the GCA and NFA." Opp. at p. 20. However, this current issue is not a new one for Defendants. As cited heavily in the Opp., Defendants rely on *Akins v. United States*, 312 F. App'x 197 (11th Cir. 2009) for the proposition of ATF's "interpretative authority … to interpret the term 'single function of the trigger'". Opp. at p. 20. In that case, the plaintiff manufactured a type of bump fire stock which utilized an internal recoil spring in the stock to accelerate the "cyclic firing rate of a semiautomatic firearm". *Id*. at 198. In March of 2002, Akins submitted his design to ATF. The device was approved by ATF shortly thereafter, and Akins again asked the ATF in January 2004 to "explain its ruling" so that Akins could be assured that his classification was correct. *Id*. After receiving additional requests from others to evaluate similar devices, the ATF reclassified the Akins Accelerator as a machinegun, overruling previous approvals and instructing Akins to "either register the devices he possessed or to

---

Browning Auto BAR 1918 A-2, registered by an individual on September 5, 1986 which was approved under the authority of the ATF. https://www.regulations.gov/contentStreamer?documentId=ATF-2018-0002-75886&attachmentNumber=2&contentType=pdf (This document was provided in a comment to the ATF and is a part of the administrative record).

ASFS stands for Akins Slam Fire Solution, and the 'stock' at issue in that classification had no trigger, but instead relied on "slam firing" the rifle to achieve faster firing rates. The ATF classified that device as a machinegun, because the rifle would fire "automatically, more than one round, by a single function of the trigger", which in that case, was the forward assembly "slamming" back into the rearward portion of the firearm. That device would also fire automatically when merely the weight of the firearm was tilted towards the forward position and the rearward position "slammed" home. Then, of course, gravity took over and allowed the firearm to fire "automatically" without additional human input. *See* Docket 16-1, pp. 43-46.

surrender them." *Id*. at 199. The ATF required that Akins "turn over any recoil springs in his possession" allowing Akins to keep the stocks. *Id*.

During this same time, other stocks which did not have this internal recoil spring, were authorized as non-machineguns by the ATF utilizing the decades-old definition of machinegun. However, as stated in *Akins*, the Eleventh Circuit adopted the ATF's interpretation that "[a]fter a single application of the trigger by a gunman, the Accelerator uses its internal spring and the force of recoil to fire continuously the rifle cradled inside until the gunman releases the trigger or the ammunition is exhausted." *Id.* at 200. What is left out of this case is that the ATF eventually approved, again, the Akins device without an internal spring.

The problem in *Akins* was that the firearm fired without any additional skill or input necessary from the operator to function. As Mr. Savage explained in his report, once the Akins Accelerator was set up, "it ran like a sewing machine". But the ATF reclassified the device as a machinegun because the internal recoil spring made it to where the operator merely pulled the trigger and the firearm functioned as a machinegun with no additional skill or technique necessary. In the Final Rule, the Defendants claim that the "purpose of a bump-stock-type device is to eliminate the need for the shooter to manually capture, harness or otherwise utilize [the recoil] to fire additional rounds, as one would have to do to 'bump fire' without a bump-stock-type device." Final Rule at 66532. This instead describes the Akins Accelerator which removed the technique and skill required to bump fire a firearm. This is also why upon removal of the internal recoil spring from the Akins Accelerator, it was no longer a machinegun because it required additional input from the shooter to function.

Mr. Savage assisted Akins with developing an ATF-Compliant bump stock device, which Plaintiff Codrea now owns. This device, once the internal recoil spring was removed, was now considered "not-a-machinegun" by the ATF because it required additional operator input. But now, under the Final Rule, Plaintiff Codrea's not-a-machinegun Akins stock will once again be a machinegun. Given this case which the Defendants rely so heavily on, their evaluation and testing of said device (both before approval and after approval of the original device and after the approval was rescinded and then with approval for the modified Akins stock), and given the adoption by the Eleventh Circuit that a "single function of the trigger" means "single pull of the trigger", Defendants' attempt to classify a bump stock without an internal spring as a machinegun fails.

It fails because it significantly downplays the human component from the equation. A bump stock will only work if the correct amount of pressure is utilized on the forward grip/forward end of the firearm. Too much pressure and the bump stock will not work. Too little pressure and it will not work. This is not a self-acting or self-regulating mechanism. "Self-acting" is defined as "acting or capable of acting of or by itself".[9] "Self-regulating" is defined as "regulating oneself or itself."[10] Defendants' Final Rule is akin to reclassifying manual transmissions as automatic transmissions because the clutch, gearbox and engine are "self-acting or self-regulating mechanisms." And perhaps the government could say that manual transmissions are now automatic because in order to change gears and keep the vehicle moving, the user simply depresses the clutch pedal, moves a lever to change gears, and then releases pressure on the clutch pedal (all while maintaining pressure

---

[9] https://www.merriam-webster.com/dictionary/self-acting

[10] https://www.merriam-webster.com/dictionary/self-regulating

on the gas pedal). The transmission, of course, will only allow the driver to select certain gears, which harkens back to the self-regulating mechanism definition. And because the clutch assists with the changing of gears, a manual transmission *must* be an automatic transmission. This shows the unreasonableness and absurdity of the Final Rule in classifying a bump stock as a machinegun. The bump stock needs additional skill and technique for it to work. It does not regulate itself and it does not act by itself and needs coordinated intervention and skill by an operator in order to make the bump fire technique work properly.

Defendants claim that if "bump stocks continue to be misclassified as unregulated items, the result would be to permit continued, lawful possession in private hands of hundreds of thousands of devices that can convert an ordinary, semi-automatic rifle into a weapon with unhindered automatic firing capability…" Opp. at pp. 21-22. First, as described in the Motion papers and Mr. Savage's report, a bump stock does not "convert" an ordinary semi-automatic rifle into a machinegun. It is not a conversion device. The binary trigger, which fits better into the definition of a machinegun is (at this stage) conveniently allowed to be possessed despite Defendants' acknowledgment it fires twice. Secondly, because the technique of bump firing a semiautomatic exists, this is really an attack on all semi-automatic firearms, because as stated previously, a semi-automatic has an almost identical operational mechanism that a machinegun utilizes. But Defendants cannot ban the bump fire technique, because all semiautomatics have the capability to achieve this type of fire.

Newton's third law states that for every action, there is an equal and opposite reaction.[11] All semiautomatics can achieve bump firing because the firearm itself directs the recoil of the fired shot to the rear of the firearm.[12] That recoil is a byproduct of the shot and is consistent with Newton's third law. Newton's third law assists to explain the "why" bump firing works and no Final Rule can change Newton's law which is why the bump firing technique cannot be eliminated. This is also the "why" rubber bands assist in bump firing a semiautomatic. But comparing rubber bands, as those can actually store and harness energy, a bump stock neither stores nor harnesses any of the recoil energy produced by the firearm.

### e.     **Defendant Whitaker's Appointment Was Unconstitutional**

Given these Plaintiffs' and Defendants' parallel arguments in this matter as in the related case *Guedes, et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, et al*, No. 18-cv-2988-DLF (D.D.C. 2018), and because additional argument would be cumulative and merely burden the record, Plaintiffs would incorporate by reference the briefing as set forth in *Pl.'s Reply ISO of Mot. for PI*, No. 18-cv-2988 [ECF 17] (D.D.C. 2018) from *Guedes* and any oral argument had on that issue.

### f.     **The Government Concedes Irreparable Harm**

Defendants "do not contest Plaintiffs' contention that 'without an injunction … Plaintiffs must either destroy or surrender their property … or face up to ten years in prison and up to a $250,000 fine…" Opp. at p. 43. This should be taken as a concession of

---

[11] https://www.grc.nasa.gov/www/k-12/airplane/newton3.html

[12] There are some firearms that channel or direct recoil in a different fashion, but those are not the type of firearms that are at issue regarding bump stocks.

14

irreparable harm.  If, as the Defendants intend, this Final Rule goes into effect on March 26, 2019, Plaintiffs are left with two choices: give up and turn in their property or go to prison.  Even if this Court later (or an appellate court) invalidates the Final Rule without an injunction in place now, Plaintiffs will be irreparably harmed.  The Defendants downplay the "magnitude of such irreparable harm" because as they say, "the principal purpose of bump stocks: for 'recreation and fun'" is apparently a throwaway concern.  Our Declaration of Independence declares that "Life, Liberty and the pursuit of happiness" are unalienable rights. Plaintiffs need not justify the "why" Plaintiffs want to keep their own property.

Defendants do claim that the implementation of the Final Rule is to "promote public safety."  Opp. at p. 44.  Defendants then claim that the "public safety benefit would be jeopardized by an injunction which would allow a terrorist or criminal to use a lawfully-possessed bump stock to carry out a large-scale attack." *Id*.  No matter that the government will not produce proof-positive that bump stocks were used in the Las Vegas incident, and that no proof of bump stock related crime has been committed since that date (or previously?) and that bump stocks are currently still "lawful" until March 26, 2019… but a terrorist or criminal could use them in an attack.  Notwithstanding criminals and terrorists can use anything in an attack (for instance, a 19 ton cargo truck on July 14, 2016 in Nice, France, killing 86 individuals and injuring 458 others)[13], (*see also* pressure cookers at the Boston Marathon, killing three individuals and injuring at least 264 others)[14], the Defendants have singled out bump stocks (but not binary triggers, rubber bands, or bump

---

[13] https://en.wikipedia.org/wiki/2016_Nice_truck_attack

[14] https://en.wikipedia.org/wiki/Boston_Marathon_bombing

15

firing in general) solely based on politics and President Trump's statement that he will ban them.

Yet banning bump stocks will do nothing to promote public safety. It is a reaction to a tragedy. Had the perpetrator in Las Vegas utilized a 19-ton truck instead, would there be a ban on rentals or purchases of large trucks? Hardly. Instead, the Defendants claim this ban on bump stocks "could result in less danger to first responders when responding to incidents." Opp. at p. 44. Banning all weapons could also result in less danger to first responders. Banning rentals or purchases of large trucks could stop a terrorist from using them to run over pedestrians. Nothing in the administrative record demonstrates that this ban on bump stocks would further public safety nor have the Defendants demonstrated that the hypothetical terrorist would want a bump stock equipped rifle rather than some other item to commit his crime. It is merely speculation on the part of Defendants and cannot rise to the level of allowing the willful violation of the rights of Plaintiffs. Truthfully, this case should be a Second Amendment case instead of an APA case because if this case is really about machineguns, it should implicate the Second Amendment. But sadly, that is foreclosed by Circuit precedent because as Justice Thomas recently stated in a dissent, "… as evidenced by our continued inaction in this area, the Second Amendment is a disfavored right in this Court." *Silvester v. Becerra*, 138 S. Ct. 945, 945 (2018) (Thomas, J. dissenting).

### IV. <u>Conclusion</u>

"It is in the public interest for courts to carry out the will of Congress and for an agency to implement properly the statute it administers." *Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 45 (D.D.C. 2000). Because the term "automatically" is not ambiguous,

Defendants cannot rewrite it to fit how they want. The Defendants' Final Rule is a complete usurpation of Congress' authority to determine the statutory definition of machinegun and the public interest will be served in enjoining this Final Rule because of the reasons set forth previously. "Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law." *Wis. Cent., Ltd. v. United States*, No. 17-530, 2018 U.S. LEXIS 3837 (June 21, 2018).

Because all factors heavily weigh in the favor of the Plaintiffs and all other interested parties, the Plaintiffs respectfully request that this Court issue a systemwide preliminary injunction staying the Final Rule's implementation until this Court rules on the merits of the action and all appeals are exhausted.

Dated: February 8, 2019

                                              Respectfully Submitted,

*/s/ Stephen D. Stambouliéh*          */s/ Alan Alexander Beck*
Stephen D. Stambouliéh               Alan Alexander Beck
Stambouliéh Law, PLLC               Law Office of Alan Beck
P.O. Box 4008                           2692 Harcourt Drive
Madison, MS 39130                  San Diego, CA 92123
(601) 852-3440                          (619) 905-9105
stephen@sdslaw.us                   Alan.alexander.beck@gmail.com
DC District Court Bar# MS0009      DC District Court Bar#HI001
                                                *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I, Stephen D. Stamboulieh, hereby certify that I have filed with the Clerk of this Court, a true and correct copy of the foregoing document or pleading, utilizing this Court's CM/ECF system, which generated a Notice and delivered a copy of this document or pleading to all counsel of record.

Dated: February 8, 2019.

                                          */s/ Stephen D. Stamboulieh*
                                          Stephen D. Stamboulieh